# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:08CR00024 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **PAUL ALSTON VAUGHN, JR.**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for the United States; Clifton L. Corker, Johnson City, Tennessee, for Defendant.*

The defendant has moved to withdraw his guilty plea and for dismissal of the indictment against him. For the reasons that follow, the motions are denied.

I

On October 6, 2008, this court accepted the guilty plea of the defendant, Paul Alston Vaughn, Jr., made pursuant to a written Plea Agreement, to a charge of conspiracy to possess with intent to distribute and distribute fifty grams or more of cocaine base, in violation of 21 U.S.C.A. §§ 841(b)(1)(A), 846 (West 1999 & Supp. 2009). On July 10, 2009, Vaughn filed a Motion to Withdraw Guilty Plea and for Evidentiary Hearing, and on August 4, 2009, filed a Motion to Dismiss Indictment. At the close of an evidentiary hearing held on August 4, 2009, I denied the requested

relief. This Opinion sets forth the facts as I find them and the reasons for my decision.

Vaughn is one of fifty-one defendants charged in this case with offenses relating to the distribution of crack cocaine. Following the Indictment, the defendants were severed into manageable groups for trial. Most of the defendants eventually pleaded guilty, and of those who went to trial, all but one were convicted by juries.

From the beginning of this case, Vaughn agreed to cooperate with the government. He provided valuable information to law enforcement officers, testified before the Grand Jury, and appeared for the government during the first two of the series of trials of codefendants.[1]

After the second trial, however, in a letter to Baumgardner's attorney and in letters to the court, Vaughn recanted his testimony. On March 6, 2009, at a hearing originally set for Vaughn's sentencing, Vaughn's original appointed attorney moved to withdraw as counsel, maintaining that Vaughn refused to cooperate in his defense. I allowed the withdrawal and appointed Vaughn's present attorney, who promptly

---

[1] The first trial, which began on October 6, 2008, involved defendants Anthony Eugene Duty, Robin Marie Davis, and Christine Evans. The second trial, which began on October 27, 2008, involved defendants Douglas Lee Stallworth and Bruce Edward Baumgardner. All were convicted except Christine Evans, who was acquitted by the jury.

moved for a competency evaluation of Vaughn, which I granted after an ex parte hearing.

After the mental evaluation concluded that Vaughn was competent,[2] Vaughn's sentencing was rescheduled, but in the meantime the present Motion to Withdraw Guilty Plea was filed by counsel.[3]

Based on Vaughn's letters and similar recantations by other cooperating defendants, codefendants Duty, Davis, Stallworth, and Baumgardner moved for new trials. At a joint evidentiary hearing on these motions, held on June 18, 2009, Vaughn and the other two recanting witnesses, Derrick Evans and Marcus Watkins, testified. Vaughn also testified at the evidentiary hearing on the present motions, along with his mother and sister and the government's case agent, Drug Enforcement Administration Special Agent Todd A. Brewer.

The evidence before me shows the following facts.

---

[2]  The basis for the request for a competency evaluation was Vaughn's apparent refusal to consider the advice of his attorneys and his family that he was placing himself in a much more difficult position by recanting his prior testimony. At the hearing on the present motions, I offered counsel an opportunity to present further evidence on Vaughn's competency, but there was none. Based on the report of the evaluation, my opportunity to observe Vaughn through his numerous court appearances, and all of the other circumstances in the case, I find that he has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and has a rational as well as factual understanding of the proceedings against him.

[3]  At the same time, Vaughn filed a pro se Motion to Withdraw Plea of Guilty, which I have also considered.

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 3 of 24   Pageid#: 12372

Vaughn is twenty-seven years old and graduated from high school in Burlington, North Carolina, his lifelong home, in 2001. He has five prior felony crack cocaine convictions in North Carolina, which caused his confinement there on and off until 2005. One of his close associates in Burlington was Oedipus Mumphrey, a childhood friend.[4] Mumphrey also has a long history of drug convictions. He is a codefendant in this case, pleaded guilty, and has been sentenced.

The DEA, acting on a request from local police, opened an investigation in early 2007 into a large scale cocaine trafficking operation in the Bristol, Virginia-Tennessee, area. The focus of that investigation was Derrick Evans and Bryant Kelly Pride, founders of a music production company called Kant Stop Records, with origins in Burlington.

In late 2007, Mumphrey and Vaughn had a falling out and Mumphrey beat up Vaughn. Vaughn's mother called the police in Burlington, and in the process of the investigation of the assault, Vaughn agreed to assist law enforcement. He supplied information about drug trafficking in Bristol, and in January 2008, Vaughn voluntarily met with law enforcement officers in Bristol, including Agent Brewer. During this meeting, Vaughn identified individuals from photographs who had been involved in the distribution of crack cocaine. After the meeting, Vaughn drove

---

[4] In addition to their business association, Mumphrey is the father of Vaughn's niece.

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 4 of 24   Pageid#: 12373

around with the officers and pointed out locations where crack had been distributed.

On May 28, 2008, Vaughn testified before the Grand Jury of this court. He acknowledged that he was "currently charged in [the] case and [was] subject to being indicted . . . [.]" (Hr'g Gov't Ex. 1 at 3, June 18, 2009.) He knew that he could be charged with perjury if he told "a willful falsehood to the Grand Jury." (*Id.* at 4.)

Vaughn told the Grand Jury that Derrick Evans, Oedipus Mumphrey, Kerry Lee, Charles King, Tyree Slade, Marcus Watkins, Andre Watkins, Reginald Morton, Emanuel Morton, and Brian Morrison had all come from Burlington to the Bristol area to sell crack cocaine. He explained that Evans, already living here, had provided Watkins and Mumphrey locations from which to distribute the drugs. Mumphrey also sold crack from a Bristol motel room and Vaughn acted as his lookout. Reginald Morton and his girlfriend Jessica Rodriguez, an individual named Drake, and Candace Maynard helped deliver the crack for Mumphrey.

On his first trip to Bristol, in April of 2006, Vaughn ran into trouble. Vaughn, Mumphrey, Reginald Morton, Emmanuel Morton, Drake, and Rodriguez had traveled to Bristol from Burlington in three separate cars. While they were at a motel, police searched one of the cars. In it they found materials used to transform powder cocaine into crack cocaine, including a hot plate, measuring cups, baking powder, and a scale. Officers did not search the car driven by Rodriguez, a gold Buick, and according to

Vaughn, thus missed two kilograms of cocaine. Vaughn escaped arrest and he and others returned to Burlington.

On another occasion, in 2007, Mumphrey paid Vaughn $1,000 to drive him to Bristol. They went to a mobile home on Anderson Street in Bristol, Tennessee, to sell crack and Vaughn served as a lookout. Another mobile home in the neighborhood caught on fire and police arrived at the scene. Mumphrey and Vaughn gave the officers false names, leading to their arrest. The officers found the keys to Mumphrey's grandmother's car, which Mumphrey had been driving, and searched it and discovered crack cocaine.

Vaughn described a dispute he had had with Mumphrey after their arrest. Mumphrey bailed Vaughn out of jail. He then asked Vaughn to take his gun back to North Carolina in a separate car and Vaughn refused. In retaliation, Mumphrey assaulted Vaughn. Later, in Burlington, Mumphrey insisted that Vaughn take sole responsibility for the Tennessee drug charge against Mumphrey. Vaughn again refused and Mumphrey again assaulted Vaughn, leading to Vaughn's contact with the police.

During his Grand Jury testimony, Vaughn provided information about specific individuals. Lee had traveled from Burlington to Bristol to supply cocaine to various distributors. At first, he operated from Mumphrey's mobile home, but then moved

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 6 of 24   Pageid#: 12375

to Frederick Cato's house, where he was eventually arrested. Vaughn described one occasion when Lee had given him $18,000 to give to Mumphrey for a half-kilogram and a "big eight[,]" which he defined as four and a half ounces. (*Id.* at 18.)

Vaughn identified various associates and customers of Mumphrey. Bruce Baumgardner bought a quarter-ounce of crack from Mumphrey at least four or five times a day. Shantha Calhoun visited Mumphrey to buy half-ounces of crack, and then resold it. Douglas Stallworth bought small quantities of crack from Mumphrey at his mobile home on Anderson Street. Vaughn stated that Stallworth "was a good customer." (*Id.* at 21.) Marcus Watkins regularly bought two ounces of crack from Mumphrey. Marcus Watkins' girlfriend, Le Ann Berry, was "real, real tall" and acted as Watkins' runner. (*Id.* at 22.) Vaughn observed Mumphrey sell a half-ounce to King and give a half-ounce to Andre Watkins. Mumphrey also supplied Brian Morrison. Tyson Anderson and Tamaray Lea worked as lookouts for Mumphrey and Marcus Watkins. Additionally, Vaughn testified that Lee and Mumphrey had operated Evans' drug business while Evans was in jail. Vaughn knew that some of the individuals who traveled from Burlington to Bristol had worked for Evans' recording company, Kant Stop Records, and had a reputation for dealing drugs.

A criminal complaint was filed and Vaughn was arrested on April 30, 2008.[5] The Grand Jury returned the Indictment on May 28, 2008, and shortly thereafter Vaughn signed a written Plea Agreement.[6]  Under the terms of the agreement, Vaughn agreed to plead guilty to the conspiracy charge and to cooperate with the government and disclose his  knowledge of any criminal activity.  In return for Vaughn's cooperation, the government agreed to dismiss one of two prior North Carolina felony drug convictions from a Sentencing Enhancement Information, a benefit that reduced the applicable statutory mandatory minimum sentence from life imprisonment to twenty years.  *See*  21 U.S.C.A. § 841(b)(1)(A) (providing for mandatory minimum sentence of twenty years if there is a prior felony drug conviction and for a mandatory minimum sentence of life imprisonment without release if there are two or more prior felony drug convictions) and 21 U.S.C.A. § 851(a)(1) (West 1999) (providing that a person cannot be sentenced to increased punishment by reason of one or more prior convictions unless government files information stating the previous convictions to be relied upon).

---

[5]  The criminal complaint was accompanied by a 69-page affidavit setting forth the allegations against the various defendants and describing the conspiracy.

[6]  The agreement shows that it was signed by Vaughn on June 22, 2008, and by the Assistant United States Attorney on June 26, 2008.

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 8 of 24   Pageid#: 12377

At his guilty plea hearing, Vaughn was placed under oath. He advised the court that he had a high school education; that he had worked in retail, in construction, and as a volunteer; that he had never been treated for mental illness of any type; that he had taken no medicine or drugs within the previous twenty-four hours; that he was not under the influence of alcohol; and that he had no current health problems. He confirmed that he had had an adequate opportunity both to discuss his case in general with his attorney, and more specifically, to read and discuss the Plea Agreement with the lawyer before he had signed it. He stated that he was fully satisfied with his lawyer's representation.

The terms of the Plea Agreement were summarized by the prosecutor and Vaughn agreed that those terms were included as he understood the agreement. He agreed that no promises had been made to him other than those contained in the Plea Agreement, and that no one had attempted in any way to force him to plead guilty.

In accord with Federal Rule of Criminal Procedure 11(b)(1), I advised Vaughn of his rights, the nature of the conspiracy charge, and the maximum possible and mandatory minimum penalties. The prosecutor then summarized the evidence amassed against Vaughn and his coconspirators, as follows:

> If called upon to do so the Government would present evidence regarding a large scale drug trafficking organization operating between

Abingdon, Virginia and Bristol, Tennessee and Kingsport, Tennessee.

Specifically, in relation to these defendants, the Government would present evidence that Derrick Evans traveled to this area from Burlington, North Carolina on, in or about 2001, the Johnson City area, and then moved to Bristol, Tennessee, Bristol, Virginia area on or about 2003.

After that time he was supplied with cocaine and crack cocaine by Kerry Lee and others. Eventually Mr. Evans asked Kerry Lee and Oedipus Mumphrey to travel to Bristol, Virginia and Bristol, Tennessee, where he set them up in different locations to distribute crack cocaine.

At a later time Mr. Oedipus Mumphrey and Paul Vaughn traveled to this area and began bringing large quantities of crack cocaine, which they were distributing to different sub-distributors in the Bristol, Tennessee, Bristol, Virginia area. Originally they were being supplied by Mr. Lee, and then the supply shifted in that Mr. Mumphrey was supplying Mr. Lee and Mr. Evans with large quantities of cocaine and crack cocaine.

(Vaughn Guilty Plea Hr'g Tr. 24-25, Oct. 6, 2008.) When I asked whether he disputed or contested any of those facts, Vaughn answered, "No, sir." (*Id.* at 26.)

At the conclusion of the hearing, I found Vaughn fully competent and determined that his guilty plea was knowing and voluntary and accepted it.

At each of his codefendants' trials in which he testified as a government witness, Vaughn told the same basic story that he had related to the Grand Jury. He explained his background in drug distribution and his involvement in the charged

conspiracy, and testified about his relations with other defendants and the extent of their criminal activity.

During his testimony at these trials, Vaughn again acknowledged the terms of his Plea Agreement. He understood that he faced a mandatory minimum sentence of twenty years in prison and that he could potentially receive a life sentence. He affirmed that the government had not promised him anything for his cooperation. He hoped for leniency, but understood that his sentence would be set by the court, and not the government.

Vaughn testified about how he became involved with the distribution of crack cocaine in Burlington. Vaughn testified that Mumphrey had introduced him to crack distribution and that through Mumphrey he had met Evans, Lee, and Marcus Watkins. The lucrative drug trade enticed Vaughn. Mumphrey gave him his "first pair of Jordans." (Duty Trial Tr. 65, vol. I, Oct. 7, 2008.)[7] Vaughn stated that in Burlington, Evans "would basically man handle somebody, or take their drugs, or sell at their spot . . . ." (*Id.* at 66-67.) Lee "fronted" drugs to distributors, which meant that distributors would obtain drugs from Lee in advance of payment. (*Id.* at 67.) Mumphrey supplied crack to Marcus Watkins, who then sold it.

---

[7]     The "Duty Trial" refers to the trial of Duty, Davis, and Christine Evans. The "Stallworth Trial" refers to the trial of Stallworth and Baumgardner.

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 11 of 24   Pageid#: 12380

Vaughn also testified about his drug dealings in Bristol and about his relationship with other drug dealers. Vaughn explained that he had made several trips to Bristol with Mumphrey. As to the Grand Jury, Vaughn related the story about the encounter with law enforcement at the motel, except he added that once they had returned to Burlington, Mumphrey had given Reginald Morton thirteen-and-a-half ounces of cocaine out of the supply. Mumphrey returned to Bristol without Vaughn and sold the remainder.

Vaughn testified that he and Mumphrey had initially sold crack from various motels in the Bristol area. Vaughn acted as a lookout while Mumphrey distributed the crack. Mumphrey regularly met with Stallworth when Stallworth would buy quarter-ounces of crack. Mumphrey established a distribution point at a mobile home on Anderson Street in Bristol, Tennessee. Again, Vaughn testified that he had been a lookout. Both Baumgardner and Stallworth bought crack from Mumphrey at the mobile home. Stallworth bought "fifties" and eight-balls (3.5 grams). (Stallworth Trial Tr. 108, vol. I, Oct. 28, 2008.) Vaughn explained that a "fifty" was "a fifty of a quarter ounce, like half a gram" and that a "hundred rock" was a gram, "$100 worth of cocaine." (*Id.* at 108-09.) Baumgardner bought quarter-ounces three or four times a day and was Mumphrey's "VIP." (*Id.* at 107.)

- 12 -

Vaughn accounted for the circumstances of his arrest in November 2007, just as he did in front of the Grand Jury. He added that the police had found $3,000 on him, which he had stolen from Mumphrey. He testified that Berry, who was known as "Seven [F]ooter," purchased crack from Mumphrey and delivered it to her boyfriend Marcus Watkins. (Duty Trial Tr. 77, vol. I, Oct. 7, 2008.) As he did to the Grand Jury, Vaughn explained that on one occasion, Lee had given Vaughn $18,000 to give to Mumphrey for a half-kilogram and a "big eight." (*Id.* at 78.)

Unlike his testimony before the Grand Jury and at the trials, Vaughn's later recanting letters and statements are inconsistent. In his recanting letters to the court and at the evidentiary hearings, Vaughn contended that he had been coerced into his Plea Agreement and that he had fabricated his testimony at the Grand Jury proceeding and at the trials.

Vaughn sent his first letter to Baumgardner's lawyer. He claimed that the "District Attorney" had stated that if he refused to testify against Baumgardner, he would receive a life sentence, but that if he testified he would not do any prison time. (Baumgardner Mot. for Acquittal or a New Trial, Ex. 1, Dec. 17, 2008.) Vaughn also stated that "they" had promised to find him a job if he cooperated, and mentioned that he had a tape recording of Mumphrey stating that the "dope" was not Vaughn's. (*Id.*)

- 13 -

In a letter dated May 6, 2009, Vaughn asked to withdraw his guilty plea. He maintained that his statements to the Grand Jury were false, that he was coerced by his lawyer, the prosecutor, and law enforcement personnel, and that he had a tape recording of Burlington Police Detective Dalton Majors threatening him with a life sentence.[8] Vaughn stated that he signed the Plea Agreement because his lawyer and the prosecutor told him that he would get a life sentence without it. Vaughn insisted that his family would testify to demonstrate that he had been threatened.

In a letter dated May 13, 2009, Vaughn repeated these same statements but added detail. He stated that while in court, he had been unable to speak because the United States Marshals Service had intimated him and that the presiding judge and the prosecutor had manipulated his lawyer. He also added that Detective Majors, the prosecutor, and DEA Agent Brewer had suborned perjury and that while speaking to Agent Brewer he had been denied an attorney. Vaughn asserted that Detective Majors had threatened him with a life sentence if he did not travel to Bristol, Tennessee, to speak with Agent Brewer. Vaughn stated that during his interview with Agent Brewer, he had been shown pictures of other defendants in this case and made false statements about each of them.

---

[8] In his letters, Vaughn referenced a "Detective Myers." At the evidentiary hearing, it was explained that "Detective Dalton Majors" is the correct name, and I will refer to him as such.

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 14 of 24   Pageid#: 12383

During the evidentiary hearing held on June 18, 2009, several undated letters to the court from Vaughn were admitted as exhibits. In his first letter, he alleged that Agent Brewer had told him that if he cooperated, he would not be charged with conspiracy. He claimed to have lied about Mumphrey and Morton because Mumphrey had severely beaten him. He claimed that the threats made by Agent Brewer, the prosecutor, and Detective Majors were recorded on a tape. He alleged that Detective Majors had attempted to force him to buy drugs off of people he did not know and had refused him an attorney. He averred that the prosecutor had tried to intimidate other defendants with letters that stated that he was going to get a life sentence because of his recantations. Vaughn claimed that he had lied for the benefit of his mother.

In another letter admitted during the hearing, Vaughn claimed that every statement made in this case had been based on hearsay. He again claimed that the prosecutor and law enforcement officers had coerced and threatened him. He mentioned two tapes: one with an exculpatory statement by Mumphrey and another with a DEA agent stating that he did not need a lawyer. He then listed twenty defendants he had lied about.

In a different letter, Vaughn specifically mentioned Reginald Morton, and claimed that the statements he made about him were false. He stated that "the people

- 15 -

that are testifying against Morton I got them indicted, now there lieing [sic] on him to get a lesser sentence and nobody period would be testifying against Morton if I wouldn't have lied about the hole [sic] case." (Hr'g Def.'s Ex. 3, June 18, 2009.) He also stated that his lawyer and the prosecutor had told him that if he did not cooperate, Robert Meade would testify against him at trial.

Vaughn testified that he had lied during the trials and that his statements in his letter to Baumgardner's attorney were true and that he had written them without help. He stated that he had never seen Baumgardner "with crack cocaine a day in [his] life . . . ." (Hr'g Tr. 25, June 18, 2009.) He insisted that he did not know Baumgardner, and that he didn't know anything about him being a valuable customer of Mumphrey's. He claimed to be unable to remember that at trial he had described different drug amounts and how much they cost. He testified that he had lied when he said Baumgardner went to Mumphrey's mobile home to buy crack and that he had lied when he testified in front of the Grand Jury.

Additionally, Vaughn recanted every incriminating statement he had made about Stallworth. He testified that he did not know Stallworth and that he had never seen him outside of court.

When cross-examined by the prosecutor, Vaughn agreed that he had been a drug dealer in the past, but claimed that since then he had had a religious awakening,

and because of that did not remember anything about his former drug trade. He acknowledged that a snitch was someone who cooperated with the government, and that people in jail often assaulted snitches. He testified that in jail he had been housed with Baumgardner, Marcus Watkins, Reginald Morton, King, Duty, and Mumphrey. After he had been housed with Baumgardner, he began to write letters to the court recanting his testimony.

Vaughn agreed that when he first met with Agent Brewer, he had provided information about drug activity in the area, and that he had identified different locations that were associated with drug activity. He also agreed that his testimony at the Grand Jury proceeding was similar to the information he had provided to law enforcement.

When asked about his trial testimony against Baumgardner and Stallworth, Vaughn stated that "Satan had me so much in bondage I don't remember what day it was and what I said." (*Id.* at 62.)

Vaughn testified that Brewer and the other officers, "didn't tell me to lie; they threatened me with a life sentence before the case started. I told them before the case I didn't know anything . . . but they kept calling me, calling me, saying I'm going to do life . . . ." (*Id.* at 46.)

At first, Vaughn claimed that he had hand written all of the letters in which he recanted his testimony, but then when confronted with the fact that at least one of the letters was in a different handwriting, admitted that he "basically wrote it, but got someone else to write it over from me." (*Id.* 65.)

At the evidentiary hearing on the present motions, Vaughn claimed that he had no involvement in the drug conspiracy. He testified that his first trip to Virginia had been motivated by a belief that he and Mumphrey were to meet at the motel in Bristol with Ludacris, a famous hip hop artist, and that Ludacris had agreed to help Vaughn obtain a record deal. Vaughn claimed that he and Mumphrey had been associated only in the music business, and that he had not known of Mumphrey's involvement in drug distribution. Vaughn testified that his later trip to Bristol was simply to post flyers for Mumphrey's music business and denied that he had helped Mumphrey sell drugs from Mumphrey's mobile home. On cross examination, he admitted that other witnesses had testified as to his involvement in drug sales, but expressed the opinion that since his lies came first, all other testimony against him could not be considered.

Vaughn's mother and sister also testified at the hearing. Vaughn's mother described Vaughn's relationship with Mumphrey in Burlington, and confirmed that Mumphrey had abused Vaughn after Vaughn refused to take responsibility for Mumphrey's drug charge in Tennessee. After Vaughn had been approached by police

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 18 of 24   Pageid#: 12387

in Burlington, she had advised him to tell the truth about his involvement with drug distribution. Vaughn's sister described a recording of a telephone conversation between Vaughn and Mumphrey, of which she had made a transcript. In that recording, made after their arrest in Bristol when police found drugs in the car driven by Mumphrey, Vaughn denies that he knew that there were drugs in the car, and Mumphrey replies, "You were in the Gd [sic] car too." (Tr. Recording 4, Feb. 18, 2008.)

At the hearing, Agent Brewer described a videotape recording of a controlled purchase by a confidential informant from Vaughn in Mumphrey's mobile home.[9] Agent Brewer also testified that some of the locations that Vaughn had identified as drug houses had been corroborated as such by other evidence.

## II

Federal Rule of Criminal Procedure 11(d)(2)(B) permits the withdrawal of a plea of guilty after acceptance but before sentence if "the defendant can show a fair and just reason for requesting the withdrawal." A defendant has no absolute right to withdraw his plea, *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003),

---

[9] This recording was disclosed in discovery. It has been filed and does appear to show Vaughn in a drug transaction.

because it is a matter within the court's discretion, *United States v. Battle*, 499 F.3d 315, 319 (4th Cir. 2007). In deciding the motion, the court should consider:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

*United States v. Ubakanma,* 215 F.3d 421, 424 (4th Cir.2000) (citing *United States v. Moore,* 931 F.2d 245, 248 (4th Cir.1991)) (footnote omitted). An appropriately conducted Rule 11 proceeding "raise[s] a strong presumption that the plea is final and binding." *United States v. Lambey,* 974 F.2d 1389, 1394 (4th Cir. 1992); *see also United States v. Puckett,* 61 F.3d 1092, 1099 (4th Cir.1995).

Vaughn has offered no credible evidence that his plea was not knowing and voluntary. At his guilty plea hearing, Vaughn was fully aware of the consequences he faced. He knew that under the terms of his Plea Agreement, "[t]he maximum statutory penalty is a fine of $8,000,000 and/or imprisonment for a term of life" and that the "mandatory minimum sentence of imprisonment [is] for a term of 20 years." (Vaughn Guilty Plea Hr'g Tr. 13-14, Oct. 6, 2008.) Vaughn affirmed that these were the terms as he understood them and that no other promises had been made to him. He again acknowledged these terms under oath at two different jury trials.

Vaughn's testimony before the Grand Jury and at two trials was consistent. At each proceeding, he identified defendants who had traveled from Burlington to Bristol to sell crack cocaine, discussed his encounter with law enforcement at the motel, and described his arrest at Mumphrey's mobile home, where he had worked as a lookout. He also related a transaction between him, Lee, and Mumphrey that involved $18,000, a kilogram and a "big eight." (Hr'g Gov't Ex. 1 at 18, June 18, 2009.) He identified Mumphrey's customers, including Baumgardner, Stallworth, and Marcus Watkins. At the Grand Jury proceeding, Vaughn correctly described Berry, who had helped Watkins sell crack, as "real, real tall" (*id.* at 22), and at trial, testified that her street name was "Seven [F]ooter." (Duty Trial Tr. 77, vol. I, Oct. 7, 2008.) Timothy Norton and Gregory Meade corroborated Vaughn's testimony. Both claimed to have bought small amounts of drugs from Stallworth, consistent with Vaughn's testimony that Stallworth regularly bought quarter-ounces of crack from Mumphrey.

Particularly in light of his prior testimony, I find Vaughn's recent claim of innocence to be untrue. At the hearing on his present motions, Vaughn claimed that he traveled to Bristol to meet with Ludacris and that he was unaware of Mumphrey's drug dealing. In his prior testimony, Vaughn never mentioned any of these facts. His recanting letters included varying explanations as to why he believed he had been

- 21 -

threatened and coerced, and as to why he believed all the defendants in this case are innocent, but he never mentioned Ludacris or his own aspiring music career.[10]

Moreover, while Vaughn now claims that he lied about everything and said whatever the prosecutors wanted him to, in his trial testimony he declined to implicate some of the defendants. For example, he testified generally concerning the conspiracy at the joint trial of Duty, Davis, and Christine Evans, but did not mention Davis or Christine Evans and said that he did not know Duty.

Without a Plea Agreement, Vaughn faced a mandatory life sentence—that he was advised of this does not amount to a threat. Vaughn exchanged the possibility of a life sentence with the strong likelihood that he would receive a sentence of less, and depending on the extent of his assistance to the government, perhaps substantially less, than twenty years. It is clear that Vaughn had the close assistance of competent counsel in the negotiation of the Plea Agreement that he now wishes to repudiate.

---

[10] Ludacris, the musician and actor from Atlanta, whose real name is Christopher Brian Bridges, "is the highest-selling Southern hip hop solo artist of all time." Wikipedia, http://en.wikipedia.org/wiki/Ludacris (last visited Aug. 10, 2009). He has won numerous popular music awards and appears in films and on TV. *Id.* The idea that Ludacris made an appointment to meet Vaughn, a wannabe rapper and small-time drug dealer, in the parking lot of a low-budget motel in Bristol to discuss a recording deal, is improbable.

Vaughn argues that because he told his former attorney that the government's allegations against him were false, he should not have been able to plead guilty. Again, I do not find this claim to be credible. At his guilty plea hearing, the government summarized the evidence it would present against Vaughn and Vaughn did not contest any of those facts.

Although I do not find the substantial delay in this case to be the determinative factor here, I still must consider it. Vaughn's recantations and current denial of guilt, which I do not believe, have resulted in numerous court hearings, prejudiced the government in its prosecution of others, and has wasted a considerable amount of judicial resources.

Vaughn pleaded guilty not because of any improper threats or coercion, but because he was correctly advised that it was in his best interests to do so. He was given a thorough Rule 11 examination before his plea was accepted, and his prior testimony and the other corroborating evidence amply supports his guilt.

Vaughn's mother has testified that she believes that something happened to Vaughn while in jail in this case that caused him to recant and thus jeopardize the favorable plea agreement he received. It is likely that he has been persuaded by some of his codefendants, fueled by his own second thoughts over his situation, to try to

- 23 -

sabotage the prosecution. Whatever his reasons, I find that he has not shown sufficient cause to withdraw his guilty plea.[11]


III

For the foregoing reasons, it is **ORDERED** that the Motions to Withdraw Guilty Plea (#2032, #2033) and the Motion to Dismiss Indictment (#2090) are DENIED.

ENTER: August 27, 2009

/s/ JAMES P. JONES
Chief United States District Judge

---

[11] At oral argument, counsel for Vaughn stated that he would rely on the same evidence submitted in support of the Motions to Withdraw Guilty Plea for his Motion to Dismiss Indictment. Accordingly, the Motion to Dismiss Indictment will be denied for the same reasons provided here.

Case 1:08-cr-00024-JPJ   Document 2205   Filed 08/27/09   Page 24 of 24   Pageid#: 12393